SIMPSON THACHER & BARTLETT LLP

425 LEXINGTON AVENUE
NEW YORK, N.Y. 10017-3954
(212) 455-2000

FACSIMILE (212) 455-2502



DIRECT DIAL NUMBER
(212) 455-2655

E-MAIL ADDRESS
bostrager@stblaw.com

BY HAND

May 9, 2008

Re: Team New Zealand Ltd. v. Société Nautique
de Genève et al, Case No. 08-CIV-2228

The Honorable William H. Pauley III
500 Pearl Street, Room 2210
New York, NY 10007



Dear Judge Pauley:

We represent Defendants Société Nautique de Genève ("SNG"), Team Alinghi, S.A., AC Management, S.A., and Ernesto Bertarelli (collectively, "Defendants") in the above-captioned action. As directed by the Individual Practice of your chambers, we write to request a pre-motion conference regarding Defendants' intent to file a motion for an order compelling Plaintiff Team New Zealand ("TNZ" or "Plaintiff") to arbitrate the claims in the Complaint and for a stay pending resolution of the motion to compel arbitration.

### Factual and Procedural Background

On March 6, 2008, TNZ filed two separate actions, each styled as *Team New Zealand Ltd. v. Société Nautique de Genève et al*. The two actions involve the same parties and are based on similar and overlapping factual allegations relating to the organization of the 33rd America's Cup. One complaint was filed in federal court and assigned to your Honor (No. 08-CV-2228-WHP) and is the subject of the instant letter. This complaint alleges violation of the federal antitrust laws based on the alleged monopolization of the supposed market to hold the America's Cup and/or the market for sponsorship rights relating to the America's Cup. The second complaint was filed in state court (N.Y. Sup. Ct. Index No. 600662/08) and removed by Defendants on May 2, 2008 to this Court (No. 08-CV-4215-WHP). The relevant factual and procedural background is described in fuller detail in Defendants' companion letter requesting a pre-motion conference in the No. 08-CV-4215 action, which is attached hereto as Exhibit A.

### Motion To Compel Arbitration

Plaintiff is bound by a broadly worded arbitration agreement. As described further in the companion pre-motion letter, Plaintiff agreed to arbitrate all claims relating to the organization of the 33rd America's Cup including those asserted herein. More specifically, TNZ's agreement to arbitrate is contained in its Notice of Entry (attached hereto as Exhibit B), which was executed by TNZ's managing director. By its terms, the dispute resolution mechanism in the Protocol, which TNZ expressly agreed to, requires arbitration of all claims arising out of or in relation to the Protocol or "Applicable Documents." These documents include the Deed of Gift and Notice of Entry. While antitrust claims are not directly referenced

The Honorable William H. Pauley III        -2-                          May 9, 2008

in the parties' arbitration agreement, the Second Circuit has held that broad arbitration clauses, such as that agreed to by TNZ, require arbitration of federal antitrust claims that touch matters covered by the contract. *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) (requiring plaintiffs to arbitrate federal antitrust claims); *see also In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 397-410 (S.D.N.Y. 2003) (granting motion to compel arbitration of federal antitrust claims). Here, Plaintiff should be compelled to arbitrate all of the causes of actions asserted in the Complaint because all of the claims fall within the scope of this broadly worded arbitration agreement.

Plaintiff's agreement to arbitrate is a separable agreement and enforceable regardless of the validity of the Protocol as a whole. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001). The arbitration panel under the Protocol has already been fully constituted, with its seat in New York, and consists of Henry Peter from Switzerland, Graham McKenzie from New Zealand, and Dr. Luis Cazorla Prieto from Spain (collectively, the "Arbitration Panel"). The Arbitration Panel has already decided other matters presented to it relating to the 33rd America's Cup.

### Motion to Stay Proceedings Pending Arbitration

In light of Plaintiff's agreement to arbitrate, the merits of Plaintiff's claims are properly determined by the arbitration panel. Defendants accordingly request that this Court stay Defendants' time to respond to the Complaint, pending resolution of the Court's ruling on the motion to compel arbitration. In the alternative, Defendants request that Defendants' motion to dismiss—which is currently due on May 20, 2008—be briefed contemporaneously with Defendants' motion to compel arbitration, on a schedule to be set at the pre-motion conference. Should the Court deny Defendants' motion to compel arbitration and Defendants' motion to stay proceedings pending arbitration, we intend to move to dismiss the Complaint. We list below a non-exhaustive list of the grounds upon which we presently plan to move.

*1) Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a*

Plaintiff fails to establish the Court's subject matter jurisdiction because the injuries allegedly suffered by TNZ occurred abroad and a mere link between a domestic effect and foreign injury, which is what at most TNZ pleads, is excluded from the Sherman Act. *Empagram S.A. v. F. Hoffman-La Roche Ltd.*, 417 F.3d 1267 (D.C. Cir. 2005).

*2) Count I*

Plaintiff's claim under § 1 of the Sherman Act (Count I) requires a showing that the defendant has market power. *NCAA v. Bd. of Regents of the Univ. of Okla.*, 468 U.S. 85, 109-11 (1984). Here, the Complaint alleges that the relevant market within which Defendants wield market power is a market "to sell sponsorship of America's Cup teams." (Compl. ¶ 56.) Plaintiff's theory, it appears, is that in this market the *buyers* are businesses that wish to sponsor sailing teams having a viable chance at winning the America's Cup, and the *sellers* are the sailing teams that, in fact, have a viable chance at winning the America's Cup. The notion that Defendants wield market power within this market "to sell sponsorships of America's Cup

The Honorable William H. Pauley III            -3-                              May 9, 2008

teams" is nonsense. The America's Cup is governed by the Deed of Gift, a document incorporated into the Complaint by reference. Pursuant to the Deed of Gift, Defendant SNG is the current holder of the America's Cup, and, as such, wields nothing less than and nothing more than the power that the Deed of Gift (a document written even before the enactment of the Sherman Act) circumscribes.

Under the Deed of Gift, SNG, after acquiring or successfully defending its status as holder of the Cup, *must* accept the first valid challenge for the Cup, *whatever* qualifying yacht club that challenge issues from. The Deed of Gift directs that SNG and the challenger then "may, by mutual consent, make any arrangement satisfactory to both as to the . . . rules" of their match. If they cannot agree on rules, then the Deed of Gift provides a set of default rules by which they must race. The idea that the statutory remedy of treble damages and attorneys' fees should create a class of "private attorneys general" to regulate the rules jointly agreed to by the current holder of the America's Cup and the first valid challenger is absurd.

   3) Counts II – IV

With respect to its claims under § 2 of the Sherman Act (Counts II-IV), Plaintiff must show that Defendants have not only market power but monopoly power in the relevant market or "a dangerous probability of [Defendants'] achieving monopoly power," *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). Plaintiff alleges that the relevant market is "the market for the right to hold the America's Cup." (Compl. ¶¶ 60, 65, 72.) However, the idea that Defendants hold monopoly power in such a "market" is, again, unfounded. Holding the America's Cup match is something that the Deed of Gift *directs* any Cup holder to do. A yacht club becomes the object of this direction by virtue of winning a match that is sailed in accordance with the directions in the Deed of Gift. If a Cup holder were to retain its hold on the Cup by, for example, cheating in an America's Cup match, perhaps the circumstances would be such that this gives rise to a state contract or tort claim. But there is no authority for the proposition that, for example, an NFL team that wins the Super Bowl by cheating has engaged in "anticompetitive conduct" for which the losing team may recover three times its lost profits.

In any event, the Complaint lacks a coherent allegation of anything being bought or sold. It presents what the Supreme Court has called "private state tort suits masquerading as antitrust actions." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 777 (1984). Its true nature is belied by Plaintiff's state common law claims in the recently removed companion suit, 08-CV-4215-WHP, for breach of contract and for breach of the fiduciary duties of a trustee of a charitable trust – based on the same factual allegations presented in this case.

                                                         Respectfully,

                                                         /s/ Barry R. Ostrager
                                                         Barry R. Ostrager

cc:   David Boies, Esq. (counsel for TNZ)

*[Handwritten:]* Application Granted. This Court will hold a pre-motion conference and the initial pre-trial conference on June 20, 2008 at 11:00 a.m.

SO ORDERED:

WILLIAM H. PAULEY III U.S.D.J.
5/19/08