**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
TEAM NEW ZEALAND LTD.,                       :
                                             :
           Plaintiff,                        :
                                             :
      – *against* –                          :
                                             :
SOCIÉTÉ NAUTIQUE DE GENÈVE,                  :      **08-CIV-2228,**
TEAM ALINGHI, S. A., AC MANAGEMENT,          :      **08-CIV-4215**
S. A., and ERNESTO BERTARELLI                :
                                             :
           Defendants.                       :
------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT .......................................................................... 1

FACTUAL BACKGROUND ............................................................................... 3

    A. The Deed of Gift ...................................................................................... 3

    B. Alinghi Accepts the Purported "Challenge" of Sham Challenger CNEV ............... 3

    C. Defendants and Plaintiff Enter into a Separate Agreement to Hold the 33rd America's Cup in Valencia in 2009 .................................................................. 5

    D. Defendants' Anticompetitive Conduct ................................................... 6

ARGUMENT ........................................................................................................ 6

    I.   The Asserted Arbitration Agreement Is Unenforceable ....................... 7

        A. The Arbitration Is Unenforceable Because It Is Both Procedurally and Substantively Unconscionable ............... 7

            1. The Arbitration Agreement Is Procedurally Unconscionable Because TNZ Had No Meaningful Choice ................................... 8

            2. The Arbitration Agreement Is Substantively Unconscionable Because Its Terms Are Unreasonably Favorable to SNG ............ 9

        B. The Asserted Arbitration Agreement Is Unenforceable Because It Lacks Mutuality ................................................................................ 11

    II.  The Parties Did Not Agree to Arbitrate Claims Relating to Defendants' Promise to Hold the America's Cup in Valencia in 2009 ..................... 12

    III. The Arbitration Agreement Cannot Govern Plaintiff's Breach of Fiduciary Duty Claim without Violating New York Trust Law ............ 16

    IV. Should Any Of Plaintiff's Claims Be Found Arbitrable, The Remaining Claims Should Proceed in this Court .................................. 18

CONCLUSION .................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Alemac Ins. Servs., Inc. v. Risk Transfer Inc.*,
No. 03 Civ. 1162, 2003 WL 22024070 (S.D.N.Y. Aug. 28, 2003) ..........................................14

*Brennan v. Bally Total Fitness*,
198 F.Supp.2d 377 (S.D.N.Y. 2002).............................................................................8, 9, 10

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006).............................................................................................................7

*Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*,
No. 95 Civ. 7685, 1996 WL 437907 (S.D.N.Y. Aug. 2, 1996) .................................15

*Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*,
117 F.3d 655 (2d Cir. 1997).................................................................................................15

*Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.*,
58 F.3d 16 (2d Cir. 1995).....................................................................................................13

*Doctor's Associates, Inc. v. Casarotto*,
517 U.S. 681 (1996)...............................................................................................................7

*Dumais v. American Golf Corp*,
299 F.3d 1216 (10th Cir. 2002) ......................................................................................9, 10

*F.D. Imp. & Exp. Corp. v. M/V Reefer Sun*,
248 F. Supp.2d. 240 (S.D.N.Y. 2002)..................................................................................18

*Gillman v. Chase Manhattan Bank*,
73 N.Y.2d 1, 534 N.E.2d 824 (1989)........................................................................8, 9, 10

*Hooters of America, Inc. v. Phillips*,
173 F.3d 933 (4th Cir. 1999) ...............................................................................................11

*In re IBJ Schroder Bank & Trust Co.*,
271 A.D.2d 322, 322, 706 N.Y.S.2d 114 (1st Dep't 2000) ...............................................17

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
387 F.3d 163 (2d Cir. 2002)..................................................................................................6

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
88 F. Supp. 2d 168 (S.D.N.Y. 2000).....................................................................................14

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
  252 F.3d 218 (2d Cir. 2001)....................................................................................13, 14

*Mercury Bay Boating Club Inc. v. San Diego Yacht Club*,
  150 A.D.2d 82, 545 N.Y.S.2d 693 (1st Dep't 1989) ....................................................18

*Mercury Bay Boating Club Inc. v. San Diego Yacht Club*,
  557 N.E.2d 87 (N.Y. 1990)............................................................................................17

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp*,
  460 U.S. 1 (1983)...........................................................................................................18

*Moss v. Rent-A-Center, Inc.*,
  No. 06 CV 3312, 2007 WL 2362207 (E.D.N.Y. Aug. 15, 2007) ....................................8

*New York State Teamsters Conference Pension and Retirement Fund v.
Boening Bros., Inc.*,
  92 F.3d 127 (2d Cir. 1996).............................................................................................17

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967).........................................................................................................6

*Sablosky v. Edward S. Gordon Co., Inc.*,
  73 N.Y.2d 122, 535 N.E.2d 643 (N.Y. 1989) ...............................................................12

*State v. Wolowitz*,
  468 N.Y.S.2d 131 (2d Dep't 1983) .................................................................................8

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*,
  64 F.3d 773 (2d Cir. 1995)..............................................................................................7

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960).........................................................................................................7

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*,
  515 U.S. 528 (1995).........................................................................................................7

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
  489 U.S. 468 (1989)......................................................................................................6, 7

*Walker v. Ryan's Family Steak Houses, Inc.*,
  400 F.3d 370 (6th Cir. 2005) ........................................................................................11

## **Statutes**

9 U.S.C. § 2.......................................................................................................................7

## **Other Authorities**

8 Williston on Contracts § 18:12 (4th ed.)...................................................................10

Bogert, *Trusts and Trustees* § 393 ...............................................................................17

Corbin on Contracts § 128 .............................................................................................9

McKinney's EPTL § 8-1.1(c)(1) ...................................................................................18

McKinney's EPTL § 8-1.4 ............................................................................................18

Restatement (Second) of Trusts § 186 (1959) .............................................................17

Plaintiff Team New Zealand Limited ("TNZ") respectfully submits this memorandum of law in opposition to Defendants Société Nautique De Genève ("SNG"), Team Alinghi, S.A. ("Alinghi"), AC Management, S.A. ("ACM"), and Ernesto Bertarelli's ("Bertarelli") motion to compel arbitration of the claims in *Team New Zealand Limited v. Société Nautique De Genève, Team Alinghi, S.A., AC Management, S.A., and Ernesto Bertarelli*, No. 08 Civ. 2228 (the "Antitrust Action") and *Team New Zealand Limited v. Société Nautique De Genève, Team Alinghi, S.A., AC Management, S.A., and Ernesto Bertarelli*, No. 08 Civ. 4215 (the "Contract Action").[1]

## PRELIMINARY STATEMENT

Defendants seek to compel arbitration of Plaintiff's claims on the basis of certain dispute resolution provisions contained in a document – the "Protocol" – that was intended to set forth the rules for the 33rd America's Cup. Defendants' motion should be denied. The arbitration provision in the Protocol upon which Defendants rely purportedly requires Plaintiff to submit any claim to arbitration, but allows Defendants to resort to court in their sole discretion. Its terms can be amended, altered, or deleted at any time without the consent of the Plaintiff. The members of the Arbitration Panel can be appointed, removed, or replaced at any time without Plaintiff's consent. The applicable law can be changed, the venue can be changed, and the jurisdiction of the Arbitration Panel can be expanded or retracted, all without Plaintiff's consent. Plaintiff, along with several other potential participants in the America's Cup, agreed to be bound by the terms of the Protocol because they had no meaningful economic choice to do otherwise. Unlike Alinghi and BMW/Oracle, which are owned by billionaires, Team New Zealand and many other America's Cup sailing teams rely on sponsorship. If these teams do not

---

[1]    A fully briefed motion to remand the Contract Action to New York State Supreme Court is also before the Court. Plaintiff respectfully submits that this Court lacks subject matter over the claims asserted in the Contract Action and that the case should be remanded.

compete in the America's Cup, they cannot obtain sponsorship and will not survive. These teams cannot therefore afford not to participate in an America's Cup. Courts do not, and this Court should not, enforce an arbitration agreement so lacking in basic procedural and substantive fairness.

Even if the asserted arbitration agreement were enforceable – and it is not – it does not, on its face, govern either the breach of contract claim or the breach of fiduciary duty claim. The breach of contract claim is based upon an agreement between the parties to hold the 33rd America's Cup in Valencia in 2009. That agreement is nowhere contained or even referenced in the Protocol, and the asserted arbitration provision, on its face, governs only disputes relating to or arising out of the Protocol and the interpretation or breach of the Protocol. Indeed, Defendants' argument is that TNZ spent millions of dollars in reliance on a promise for which its only recourse was to bring a claim before an arbitration panel whose members serve at the pleasure of Defendants, and the rules of which could be changed at any time without Plaintiff's consent. That is not believable.

The breach of fiduciary duty claim, based on violations of the Deed of Gift, is likewise not governed by the asserted arbitration agreement, nor could it be. Even if the arbitration agreement were interpreted as governing claims made under the Deed of Gift, it would be invalid, because requiring arbitration of claims brought under the Deed of Gift (1) constitutes an amendment of the Deed of Gift, which can only be done by the New York Supreme Court at the request of the New York Attorney General and (2) would illegally infringe upon New York's right to enforce the Deed of Gift as a charitable trust.

## FACTUAL BACKGROUND

### A. The Deed of Gift

The America's Cup, the world's premier sailing competition, is the longest-running

sports competition in the world. The America's Cup trophy itself is the corpus of a trust

established under the laws of New York by a Deed of Gift, dated October 24, 1887, which gave

the trophy to the New York Yacht Club to be held in trust as a "challenge" trophy. The purpose

of the trust is to promote friendly competition among nations. Antitrust Complaint ¶ 21. The

Deed of Gift entitles "[a]ny organized Yacht Club of a foreign country, incorporated, patented,

or licensed by the legislature, admiralty, or other executive department, having for its annual

regatta on ocean water course on the sea, or on an arm of the sea, or one which combines both"

"the right of sailing a match for this Cup." Contract Complaint ¶ 15. Once a challenge fulfilling

all the conditions required by the Deed of Gift has been received by the club holding the Cup,

"no other challenge can be considered until the pending event has been decided." *Id.* ¶ 16.

The Deed of Gift provides certain default requirements for the match, but provides that

the defending club and the challenging club should set additional rules by mutual consent. *Id.* ¶

17. This "mutual consent clause" ensures that competition for the America's Cup will be fair

and that the Cup will continue to be preserved for "friendly competition between foreign

countries." *Id.*

### B. Alinghi Accepts the Purported "Challenge" of Sham Challenger CNEV.

In direct contravention to the Deed of Gift, Alinghi, following its defeat of TNZ in the

32nd America's Cup, accepted the "challenge" of Club Náutico Español de Vela ("CNEV"). *Id.* ¶

19. CNEV, however, existed only on paper. It had no yachts. Its only members were the

directors of Real Federación Española de Vela ("RFEV"), the governing body for the sport of

3

sailing in Spain, who executed its incorporation and registration papers merely days before CNEV issued its challenge. Most important, as of the date of CNEV's challenge, it had never held a regatta. The requirement that a challenging club hold an annual regatta is one of the few qualifications found within the Deed of Gift. *Id.* ¶ 20.

It is the historical practice for the challenging club and the defending club to issue a "protocol" that announces the rules for the next America's Cup to which the two clubs have mutually consented, pursuant to the Deed of Gift's mutual consent clause. Instead, Defendants issued a protocol that grants to themselves the right to set the terms of the next America's Cup unilaterally. *Id.* ¶ 22.

The Protocol Governing the 33rd America's Cup (the "Protocol") provides that SNG may appoint Defendant ACM, a commercial entity owned and controlled by Defendant Bertarelli, as the Event Authority. The Protocol gives ACM the power to appoint members of the Race Committee, Measurement Committee, and Umpires; the power to fine competitors for "non-compliance" of rules; the power to deduct fines from any moneys owed to competitors; the power to take legal action to recover outstanding fines; the power to reject or accept any entry received based on four expansive grounds; the power to issue and amend new ACC Rules; and the power to determine the racing schedule and racing rules. *Id.* ¶¶ 25-28. The Protocol also grants SNG and CNEV the power to amend the Protocol at any time and in any way. Protocol ¶ 36.1.

To solidify their control, Defendants put in place an arbitration provision that purports to require Plaintiff to submit any dispute to arbitration, but allows SNG to resort to court at any time in its sole discretion. The Protocol permitted SNG and CNEV "to dismiss and replace the members of the Sailing Jury and the Arbitration Panel at their discretion at any time." *Id.* ¶

24.3.[2] Nothing prevents SNG and CNEV from adding seats to the Arbitration Panel, even when a matter is currently pending before it. In short, Defendants have insulated their misconduct by requiring that all competitors who wish to race in the America's Cup to either relinquish all claims against Defendants, or bring such claims before an arbitration panel whose members can be replaced at any time, and whose rules can change at any time.

These arbitration provisions were presented to Plaintiff and all other potential competitors in the 33rd America's Cup on a take-it-or-leave-it basis. Neither Plaintiff nor any other sailing team had the right to negotiate or amend these provisions.

### C. Defendants and Plaintiff Enter Into a Separate Agreement to Hold the 33rd America's Cup in Valencia in 2009.

Despite the Defendants' unprecedented actions, and despite the uncertainty surrounding the 33rd America's Cup, Plaintiff was unwilling to forgo participation and risk near certain economic collapse. *See* Contract Complaint ¶¶ 38-45. Therefore, in reliance on Defendants' promise that the America's Cup would be held in Valencia, Spain in 2009, Plaintiff agreed to enter the 33rd America's Cup, settled its budget for a 2009 event, negotiated for the sale of its sponsorship rights, and entered into employment contracts and lease agreements. *Id.* ¶ 45.

On November 22, 2007, Defendants unilaterally breached their agreement with Plaintiff by announcing that the 33rd America's Cup *would not* be held in Valencia in 2009. *Id.* ¶ 46. The effect of Defendants' breach on TNZ has been and continues to be substantial. Costs associated with deferring the event will likely exceed tens of millions of dollars.

---

[2]     On September 20, 2007, SNG and CNEV exercised their near-unlimited power to amend the Protocol. Among other things, the amended Article 24.3 now permits SNG and CNEV to jointly replace a member of the Arbitration Panel upon resignation, death, or "significant unavailability during the Regatta." A version of the Protocol as issued on July 3, 2008, along with the September 20, 2007 amendment, is attached as Exhibit B to Defendants' Notice of Removal, submitted to this Court in the Contract Action on May 2, 2008.

**D. Defendants' Anticompetitive Conduct.**

As alleged in the Antitrust Complaint, the America's Cup is the third most watched sporting event in the world, attracting millions of consumers. The sale of sponsorship rights is therefore lucrative, with sponsors paying hundreds of millions of dollars for each America's Cup competition. Plaintiff and Defendants compete in the market to sell sponsorship. Through the actions described above, Defendants eliminated competitors and restricted competition in the market to sell sponsorship rights. Antitrust Complaint ¶¶ 23-25.

In addition, winning the America's Cup delivers not only the actual trophy but also the right to determine the host city for the next America's Cup, a right that can be easily leveraged into an economic advantage for the defending club. *Id.* ¶ 26. Defendants have market power in the market to hold the America's Cup by virtue of their status as Defender, and have abused and extended this power through the conspiracy described above, resulting in monopolization of the market for the right to hold the America's Cup.

## ARGUMENT

Defendants move under the Federal Arbitration Act ("FAA") to compel arbitration of Plaintiff's claims in both the Antitrust Action and the Contract Action based on the dispute resolution provisions found in the Protocol.

"Arbitration is a matter of consent, not coercion." *JLM Indus., Inc. v. Stolt-Nielsen* SA, 387 F.3d 163, 171 (2d Cir. 2002) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). The purpose of the FAA is "to make arbitration agreements as enforceable as other contracts, *but not more so.*" *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12 (1967) (emphasis added). Specifically, under the FAA, an agreement to arbitrate a dispute "shall be valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Challenges that go to the validity and enforceability of the agreement to arbitrate are properly

considered by the court, not by the arbitrator. *See Buckeye Check Cashing, Inc. v. Cardegna*,

546 U.S. 440, 443-44 (2006).

Moreover, "a party cannot be required to submit to arbitration any dispute which he has

not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363

U.S. 574, 582 (1960); *see also Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776

(2d Cir. 1995) (holding that arbitration agreements "must not be so broadly construed as to

encompass claims and parties that were not intended by the original contract"). Therefore, "the

FAA does not require parties to arbitrate when they have not agreed to do so." *Volt Info.*, 489

U.S. at 478.

## I.    THE ASSERTED ARBITRATION AGREEMENT IS UNENFORCEABLE.

### A.  The Arbitration Agreement Is Unenforceable Because It Is Both Procedurally and Substantively Unconscionable.

Under the FAA, an unconscionable arbitration agreement is unenforceable. *See Doctor's

Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("Thus, generally applicable contract

defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration

agreements without contravening § 2."); *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*,

515 U.S. 528, 555-56 (1995) ("Like any other contractual clause, then, an arbitration agreement

may be invalid without violating the FAA if, for example, it is procured through fraud or forgery;

there is mutual mistake or impossibility; [or] the provision is unconscionable . . . ."). Under New

York law, "A determination of unconscionability generally requires a showing that the contract

was both procedurally and substantively unconscionable when made – i.e., some showing of an

absence of meaningful choice on the part of one of the parties together with contract terms which

are unreasonably favorable to the other party." *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1,

10, 534 N.E.2d 824, 828 (1989) (citations omitted). "[P]rocedural and substantive

unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of

choice, the less imbalance in a contract's terms should be tolerated and vice versa." *State v.*

*Wolowitz*, 468 N.Y.S.2d 131, 145 (2d Dep't 1983). In some exceptional instances, "a provision

of the contract is so outrageous as to warrant holding it unenforceable on the ground of

substantive unconscionability alone." *Gillman*, 73 N.Y. 2d at 12, 534 N.E.2d at 829.

      1.   The Arbitration Agreement Is Procedurally Unconscionable Because TNZ
            Had No Meaningful Choice.

"To determine whether there is procedural unconscionability, courts look at whether a

party lacked meaningful choice." *Moss v. Rent-A-Center, Inc.*, No. 06 CV 3312, 2007 WL

2362207, at *5 (E.D.N.Y. Aug. 15, 2007). *See also Brennan v. Bally Total Fitness*, 198

F.Supp.2d 377, 382 (S.D.N.Y. 2002) ("[T]he test for procedural inadequacy in forming a

contract is whether, in light of all the facts and circumstances, a party lacked 'a meaningful

choice' in deciding whether to sign the contract."). Among other factors, courts look at the

disparity in bargaining power between the parties. *Moss*, 2007 WL 2362207 at *5. Here, TNZ

plainly lacked meaningful choice regarding its "decision" to be bound by the Protocol's dispute

resolution provisions. Simply put, SNG had all the bargaining power and TNZ had none.

      TNZ exists solely for the purpose of racing in the America's Cup. Racing in the

America's Cup, and the related sale of sponsorship rights, is TNZ's sole business. If TNZ had

chosen not to participate in the 33rd America's Cup, it would have faced near certain economic

collapse. America's Cup teams that, unlike Defendant Alinghi, are not owned by billionaires,

cannot survive more than a few years without participating in an America's Cup. TNZ therefore

had no meaningful economic choice but to participate in the 33rd America's Cup, regardless of

the terms of participation. Notably, the arbitration clause, which requires TNZ (and other potential competitors) to submit all claims to arbitration, but allows SNG to go to court in its sole discretion, was presented on a take-it-or-leave-it basis. None of the teams that signed onto the Protocol had any say in how the provision was drafted; none had any opportunity to negotiate it terms. If teams wanted to participate in the America's Cup, they had to agree to Defendants' terms.

In light of the severe imbalance in bargaining power between Plaintiff and Defendants in entering into the asserted agreement, and the lack of a meaningful choice on the part of Plaintiff, the arbitration clause is procedurally unconscionable. *See, e.g., Brennan*, 198 F. Supp. 2d at 382-83.

2.  The Arbitration Agreement Is Substantively Unconscionable Because Its Terms Are Unreasonably Favorable to SNG.

Under New York law, an arbitration agreement is substantively unconscionable if it contains "contract terms which are unreasonably favorable to the other party." *Gillman v. Chase Manhattan Bank,* 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 534 N.E.2d 824, 822 (1988) (citing 1 Corbin on Contracts § 128). *See also, e.g., Brennan*, 198 F.Supp.2d at 383 (S.D.N.Y. 2002) (refusing to compel arbitration due to "unreasonably favorable" terms).

An agreement to arbitrate is substantively unconscionable if one party may unilaterally amend significant features of the agreement. *Id.* at 384 (finding that arbitration agreement to be substantively unconscionable because "its terms allow Bally to unilaterally modify the contract at any time, thus binding employees to a contract they may never have seen"); *Dumais v. American Golf Corp*, 299 F.3d 1216, 1219 (10th Cir. 2002) ("We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."). The Protocol, as it existed when TNZ signed

onto it, allowed SNG and CNEV to amend or delete any of its terms at any time. *See* Protocol ¶ 36.1 ("Amendment by the parties: SNG and the Challenger of Record may from time to time amend this Protocol by the deletion of terms and/or the addition of new terms.").[3] The determination of whether the arbitration clause is unconscionable "is to be made at the time of its making, rather than at some subsequent point in time." 8 Williston on Contracts § 18:12 (4th ed.); *Gillman*, 73 N.Y.2d at 10, 534 N.E.2d at 828 ("A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable *when made*.") (emphasis added).

Apparently recognizing that the Protocol as written was unenforceable, the Arbitration Panel suggested that it be amended. *See* 33rd America's Cup Arbitration Panel Decision in case No. ACAP 33/01 at 79-84 (Youngwood Aff. at Ex. H). Exercising its unrestricted power to do so, Defendants amended Article 36.1 to include a list of articles which could not be amended without the prior approval of the Arbitration Panel. *See* Protocol, Amendment No. 1, ¶ 5. However, even under the amended Article 36.1, although certain provisions can now be amended only with the consent of the Arbitration Panel, *any part of the Protocol – including the arbitration provision – can be amended at any time without Plaintiff's consent and without notice to Plaintiff. See id.* Among other things, without Plaintiff's consent, the substantive and procedural law to be applied by the Arbitration Panel, the seat of the Arbitration Panel, the binding nature of awards issued by the Panel, and the composition of the Arbitration Panel can all be changed at any time. Under those circumstances, the arbitration agreement is unenforceable. *See Brennan*, 198 F.Supp.2d at 383; *Dumais*, 299 F.3d at 1219-20.

---

[3]    The Protocol as issued also permitted SNG and CNEV to "dismiss and replace the members of the Sailing Jury and the Arbitration Panel at their discretion at any time," a grossly unfair provision which was later amended to provide that SNG and CNEV may do so upon, among other things, "significant unavailability during the Regatta." Protocol, Amendment No. 1, ¶ 5.

Even without the approval of the Arbitration Panel, Defendants and CNEV may amend the Protocol to add seats to the Arbitration Panel at any time, even after a matter has been submitted to the Panel. TNZ is thus powerless to prevent SNG and CNEV from packing the panel by appointing additional arbitrators. Specifically, while Article 24.1 of the Protocol provides that the Arbitration Panel shall comprise of three members, Defendants can amend this article without prior permission of the Arbitration Panel. Article 24.3, which requires Arbitration Panel approval, governs only dismissal and replacement of current panelists; it is silent on the issue of adding new members to the Panel. In any event, as discussed above, panel members can be dismissed or replaced at any time without TNZ's consent, so long as the Arbitration Panel approves. Protocol, Amendment No. 1, ¶ 5. Courts routinely invalidate arbitration agreements where one party can unilaterally control the selection of the arbitrators. *See Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999) (refusing to compel arbitration due to, among other things, employer's unilateral control over arbitrator selection); *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 385 (6th Cir. 2005) (refusing to compel arbitration due to employer's unilateral control over arbitrator selection).

The asserted arbitration agreement is thus both procedurally and substantively unconscionable, and is therefore unenforceable.

### B. The Asserted Arbitration Agreement Is Unenforceable Because It Lacks Mutuality.

Under the Protocol, TNZ must arbitrate "any dispute, protest or claim arising out of or in relation to this Protocol and/or the Applicable Documents," Protocol ¶ 21, while "nothing shall prevent SNG from making any application [to a court] it considers in its sole discretion appropriate regarding the administration of the Deed of Gift." *Id.* ¶ 35. That is, TNZ is required to submit all claims to arbitration, but SNG can take any matter to court in its sole discretion. A

non-mutual arbitration agreement such as this is enforceable only where the contract itself

contains sufficient consideration. *Sablosky v. Edward S. Gordon Co., Inc.*, 73 N.Y.2d 133, 137,

535 N.E.2d 643, 646-47 (N.Y. 1989). Here, both the contract as a whole and the arbitration

provision standing on its own lack consideration.

The contract as a whole lacks consideration because Defendants' ability to amend its

terms unilaterally renders any bargained-for gain to the promisee or detriment to the promisor

illusory. TNZ has agreed to be bound by the Protocol, but the terms of the Protocol can be

amended at any time without TNZ's consent, which means that any bargain struck by TNZ and

Defendants is subject to Defendants' unilateral amendment. In essence, SNG has not promised

to do anything. With specific regard to the arbitration agreement, Plaintiff promised to arbitrate

its disputes in exchange for Defendants promise to arbitrate disputes "in its sole discretion."

That is a classic illusory promise, and there is therefore no consideration. Accordingly, the

asserted arbitration agreement lacks mutuality, lacks consideration, and because the contract as a

whole lacks consideration, is unenforceable.[4]

## II.    THE PARTIES DID NOT AGREE TO ARBITRATE CLAIMS RELATING TO DEFENDANTS' PROMISE TO HOLD THE AMERICA'S CUP IN VALENCIA IN 2009.

The asserted arbitration provision, as described above, governs only "disputes, protests or

claims arising out of or in relation to this Protocol and/or the Applicable Documents." The

breach of contract claim arises out of Defendants' promise to hold the America's Cup in

---

[4]    Defendants' argument that Plaintiff is somehow bound by Royal New Zealand Yacht Squadron's promise not to resort to court is misplaced. Def. Br. at 8 n.8. The Notice of Entry states that "RNZYS and Team New Zealand each hereby unconditionally agree and accept to be bound by the dispute resolution provisions of the Protocol and by the decisions rendered by the Measurement Committee, Sailing Jury and Arbitration Panel in accordance with such provisions of the Protocol. RNZYS further unconditionally submit to the exclusive jurisdictions of the Measurement Committee, Sailing Jury, and the Arbitration Pane as provided in the said Protocol and agree not to resort to any other court, or tribunal in respect of any matter regarding the 33rd America's Cup." Ex. A. to Youngwood Affidavit (emphasis added). TNZ made no such promise. While estoppel might be appropriate to bind a nonsignatory in some instances, it cannot be used to amend a written agreement in this way.

Valencia in 2009. That promise is nowhere mentioned in the Protocol or any of the documents described in Article 1.1(d). Defendants' promise, and subsequent breach, therefore does not relate to or arise out of the Protocol.

Specifically, the Contract Complaint alleges that on July 25, 2007, James Farmer, a director of TNZ, wrote to Hamish Ross, General Counsel for Alinghi, and informed him that TNZ would enter the 33rd America's Cup if "the following is agreed: 1. The Event will be in 2009 in Valencia and there will be a very early announcement to that effect." Contract Complaint ¶ 40; see also Exhibit A to the Contract Complaint. Hamish Ross responded that he was "instructed by Ernesto [Bertarelli] to accept the terms set out in your letter (paragraphs 1-7), as well as the understandings reached between Grant and Ernesto." Contract Complaint ¶ 43; *see also* Exhibit A to the Complaint.

Defendants seek to bootstrap the arbitration provisions in the Protocol onto the contract claim by asserting that the Protocol's terms are broad enough to cover any "collateral" matters that "touch on arbitrable disputes." Def. Br. at 11. An arbitration provision in one contract can govern claims in a related contract only where claims in the related contract "implicate issues of contract construction or the parties' rights and obligations under" the other agreement. *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 228-29 (2d Cir. 2001) (citing *Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.*, 58 F.3d 16, 23 (2d Cir. 1995). Here, Defendants' promise to hold the America's Cup in Valencia in 2009 does not implicate issues of contract construction, whether in the Protocol or any other document to which Defendants can point, nor does it implicate the parties' rights and obligations under the Protocol, because the Protocol does not purport to govern when and where the 33rd America's Cup would take place.[5]

---

[5] Defendants' assertion that "disputes regarding the date and location of the America's Cup are expressly addressed in the Protocol" is untrue. Def. Br. at 11 n.9 (citing Protocol ¶¶ 13.1 and 13.2). Those sections establish

The cases cited by Defendants do not support compelling arbitration of Plaintiff's breach of contract claim. In *Louis Dreyfus*, the parties entered into a "charter party" containing an arbitration clause. In that agreement, the charterer agreed to pay all costs relating to any change in the destination port and to indemnify the vessel for compliance with the charterer's orders. *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 88 F. Supp. 2d 168, 169-70 (S.D.N.Y. 2000). When the charterer changed the port of delivery mid-voyage, it issued a separate letter of indemnification to the carrier, which did not contain an arbitration clause. *Id.* The Second Circuit affirmed the district court's opinion holding that a claim of indemnity based on the letter of indemnification had to be arbitrated under the charter party's arbitration clause, because that claim implicated rights under the charter party, namely the charterer's obligation to pay costs relating to changes in delivery ports and indemnification for compliance with the charterer's orders. *See Louis Dreyfus*, 252 F.3d at 228-29. Thus, in *Louis Dreyfus*, the vessel's claim for indemnity, was explicitly referenced and covered by the agreement containing the arbitration clause. Here, by contrast, Defendants' promise to hold the Cup in Valencia in 2009 is nowhere mentioned in the Protocol.

*Alemac Ins. Servs., Inc. v. Risk Transfer Inc.*, No. 03 Civ. 1162, 2003 WL 22024070, *5 (S.D.N.Y. Aug. 28, 2003) is similarly inapposite. In *Alemac*, the parties entered into a partnership agreement, containing an arbitration clause, which created a partnership called Leprechaun Holdings. That holding company was to be funded according to the terms of a separate agreement, called the BCC, executed nearly simultaneously, where the parties agreed to contribute 10% of net commissions for work under the partnership agreement into the holding

---

that ACM will select and announce the venue and date of the Regatta and Qualifying Regattas by December 31, 2007, "or such later date announced on 31st December 2007 as may be reasonably necessary to complete selection and contracting." Plaintiff's breach of contract claim is not a dispute regarding the deadline by which ACM will announce the date and venue of the America's Cup.

company. *Id.* at *5. The BCC specifically stated that "Terms of Leprechaun Holdings are spelled out under a separate agreement," and neither party disputed that the "separate agreement" was indeed the partnership agreement. *Id.* Thus, the agreement explicitly referenced the agreement containing the arbitration clause, and on that basis, the Court held that claims for breach of the BCC must be arbitrated in accordance with the partnership agreement's arbitration clause. *Id.* Here again, by contrast, the Protocol does not refer to the parties' agreement regarding the time and place of the 33rd America's Cup, and vice versa.

    *Campaniello Imps, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655 (2d Cir. 1997) is no more helpful to Defendants. In that case, the parties entered into an exclusive sales agreement (the Gidatex Agreement) in which they, among other things, agreed to release claims against one another. That agreement contained an arbitration clause. *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,* No. 95 Civ. 7685, 1996 WL 437907, at *2-3 (S.D.N.Y. Aug. 2, 1996). Alleging that the agreement was procured by fraud, plaintiff, among other things, sued for rescission and sought damages for unjust enrichment from defendants' repudiation and termination of an earlier agency agreement. The court found the arbitration agreement to be enforceable. The court also found that the unjust enrichment claim was "naturally dependent on appellant's rights under the Gidatex Agreement and also touches matters covered by the Gidatex Agreement; thus, the unjust enrichment claim is also subject to mandatory arbitration." *Campaniello,* 117 F.3d at 668. Here, it cannot be said that TNZ's contract claim is "naturally dependent" on its rights under the Protocol. Rather, Plaintiff's claim is based upon the loss of millions of dollars it spent in reliance on Defendants' promise, a claim that is in no way dependent upon anything in the Protocol.

Fundamentally, the idea that Plaintiff would have agreed that a claim based on a breach of Defendants' promise to hold the Cup in Valencia in 2009 would be subject to the arbitration provision of the Protocol is unfathomable. Plaintiff went to great lengths to extract this promise, and then expended millions of dollars in reliance on it. Plaintiff would not have done so had it believed that its only recourse in case of a breach by Defendants was to bring a claim that would be heard by a panel appointed by Defendants, the members of which could be replaced at any time, and the rules for which could be changed mid-course. That would have been no promise at all. Plaintiff's breach of contract claim is not governed by the arbitration provision of the Protocol, and Plaintiff cannot be compelled to arbitrate this claim.

### III.    THE ARBITRATION AGREEMENT CANNOT GOVERN PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM WITHOUT VIOLATING NEW YORK TRUST LAW.

Plaintiff's breach of fiduciary duty claim, which arises out of the Deed of Gift, is not governed by the dispute resolution provisions found in the Protocol. Those provisions are limited to "any dispute, protest or claim arising out of or in relation to this Protocol and/or the Applicable Documents." Protocol ¶ 21. Article 1.1(d) states that "Applicable Document means any document made under authority of this Protocol and includes the documents referred to in Article 2.5." Article 2.5, entitled "Applicable Rules," lists the Deed of Gift, the Protocol, the Competition Regulations, Event Regulations, and ACC Rules, the Notices of Race, the Sailing Instructions, and the Racing Rules. The Deed of Gift's inclusion in this list renders Article 1.1(d)'s definition of "Applicable Document" ambiguous, however. According to Article 1.1(d), the Applicable Document "means" any document made under authority of this Protocol and "includes" those documents listed in Article 2.5. The Deed of Gift is the only document in Article 2.5 that was *not* created under the Protocol.

Putting this ambiguity aside, if the Protocol were to be interpreted as requiring arbitration of all disputes arising out of the Deed of Gift, the arbitration clause would violate the terms of the Deed of Gift and, according, would be invalid under New York law. "It is settled that the duties and powers of a trustee are defined by the terms of the trust agreement and are tempered only by the fiduciary obligation of loyalty to beneficiaries." *In re IBJ Schroder Bank & Trust Co.*, 706 N.Y.S.2d 114, 114 (1st Dep't 2000). A trustee cannot unilaterally amend a trust instrument to include a mandatory arbitration provision unless the power to do so has been granted to the trustee in that instrument. *See, e.g.*, Bogert, *Trusts and Trustees* § 393 ("Nor has the trustee power to alter the trust with respect to the methods of administration prescribed by the settler, unless this authority is set forth in the trust instrument."); *New York State Teamsters Conference Pension and Retirement Fund v. Boening Bros., Inc.*, 92 F.3d 127, 132 (2d Cir. 1996) ("[T]he trustee can properly exercise such powers *and only such* powers as (a) are conferred upon him in specific words by the terms of the trust, or (b) are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust.") (quoting Restatement (Second) of Trusts § 186 (1959)) (emphasis added). Here, Defendants cannot dispute that the Deed of Gift does not require that disputes relating to the Deed of Gift must be arbitrated. Nor does the Deed of Gift grant the trustee the authority, acting either unilaterally or in concert with the challenging club, to establish such a requirement. Here, the asserted arbitration agreement purports to require arbitration of all disputes under the Deed of Gift. That constitutes an impermissible amendment to the trust instrument, in violation of New York law.

Moreover, the America's Cup has been characterized as a charitable trust under New York law. *Mercury Bay Boating Club Inc. v. San Diego Yacht Club*, 76 N.Y.2d 256, 260 557 N.E.2d 87, 89 (N.Y. 1990). Modification of charitable trusts is accomplished via a formal court

17

proceeding, in which the New York State Attorney General, who represents the beneficiaries of a charitable trust, is a necessary party. McKinney's EPTL § 8-1.4 ("No court shall modify or terminate the powers and responsibilities of any trust, corporation or other trustee unless the attorney general is a party to the proceeding . . . .").[6] Thus, the modification violates New York law for that additional reason.

Requiring arbitration of claims brought under the Deed of Gift would further violate New York law because it would infringe on New York's interest in the administration of New York charitable trusts. New York statutory law gives New York courts jurisdiction over charitable trusts, McKinney's EPTL §8-1.1(c)(1), and New York has an interest in overseeing the administration of charitable trusts for the benefit of trust beneficiaries. A trustee cannot limit the jurisdiction of New York courts to enforce a charitable trust by requiring that all trust beneficiaries submit claims regarding the administration of the trust to an arbitration panel created by the trustee.

## IV.    SHOULD ANY OF PLAINTIFF'S CLAIMS BE FOUND ARBITRABLE, THE REMAINING CLAIMS SHOULD PROCEED IN THIS COURT.

Should this Court refer any of Plaintiff's claims to arbitration, the remaining claims should be allowed to proceed in this Court.[7] "When there is a combination of arbitrable and non-arbitrable issues, a court has discretion to stay the non-arbitrable issues pending arbitration." *F.D. Imp. & Exp. Corp. v. M/V Reefer Sun*, 248 F. Supp. 2d. 240, 250-51 (S.D.N.Y.2002) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr Corp*, 460 U.S. 1, 21 n. 23 (1983). Factors to be considered include whether the arbitrable claims dominate, the merit of the non-arbitrable claims, the court's concern for controlling its docket, and overall judicial economy. *Id.* at 251.

---

[6]    Indeed, the Deed of Gift has been amended twice through orders of the Supreme Court, once in 1965 and again in 1985. *See Mercury Bay Boating Club Inc. v. San Diego Yacht Club*, 150 A.D.2d 82, 84 545 N.Y.S.2d 693, 694 (1st Dep't 1989).

[7]    Unless, of course, this Court finds that it does not have subject matter jurisdiction over the Contract Action.

Because Plaintiff's three claims are sufficiently separate and distinct, any claims remaining before this court should not be stayed pending arbitration.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to compel arbitration should be denied.

Dated: July 31, 2008

Respectfully submitted,

BOIES, SCHILLER & FLEXNER, LLP

David Boies
333 Main Street
Armonk, New York 10504
(914) 749-8200

Philip M. Bowman
575 Lexington Avenue, 7th Floor
New York, New York 10022
(212) 446-2300

*Attorneys for Plaintiff Team New Zealand Ltd.*